**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>v.<br><br>JOSEPH MOORE<br>Defendant. | Criminal Action No. 25-439 |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Joseph Moore, by and through his counsel, submits this Sentencing Memorandum to assist the Court in determining a fair and just sentence.

## I. INTRODUCTION

Joseph Moore is a 24-year-old man with an unblemished record. He was only 19 years old when he became involved in the SIM swapping scheme that is the subject of this case.

Mr. Moore offers no excuses or rationalizations for his misconduct. He has accepted responsibility for trafficking in passwords. Mr. Moore's advisory guideline imprisonment range is 0 to 6 months. Given that guideline range, a sentence of imprisonment is not required and is generally appropriate. Moreover, this Court has statutory authority, pursuant to 18 U.S.C. §3561(a)(2), to impose a sentence of probation because Mr. Moore's offense is a misdemeanor. Accordingly, Mr. Moore

requests a sentence of probation as that sentence would be sufficient but not greater than necessary to satisfy the purposes of sentencing.

## II. PROCEDURAL HISTORY AND ESSENTIAL FACTS OF THE OFFENSE

### A. Procedural History

The Presentence Investigation Report (PSR") accurately details the procedural history of Mr. Moore's case. On November 12, 2025, Mr. Moore pleaded guilty to a one-count Information charging trafficking in passwords, in violation of 18 U.S.C. §1030(a)(6) and (c)(2)(A). Mr. Moore's plea was tendered pursuant to a written Guilty Plea Agreement.

### B. Essential Facts

The PSR accurately describes the essential facts of Mr. Moore's offense.

## III. ANALYSIS

The Third Circuit Court of Appeals has made clear that sentencing judges "now have substantial discretion to impose sentences anywhere within the statutory range" and that it expects that judges (will) examine the particular facts of each case . . . without getting bogged down in formalistic technicalities." *United States v. Kennedy*, 554 F.3d 415, 423 (3d Cir. 2009). The Court emphasized that:

> Sentencing is not a mathematical calculation; it is a human enterprise that requires wisdom, judgment, and old-fashioned common sense. To the extent the plain

> language of the Guidelines – including its Commentary and Application Notes – would lead to unfair results, we repose our confidence in district judges to apply fairly and justly the factors set forth in 18 U.S.C. §3553(a) which may require variances from the Guideline range.

*Id.*

The overarching principle governing the sentencing process requires this Court to impose a sentence that is "sufficient but not greater than necessary" to comply with the purposes of sentencing. *United States v. Olhovsky*, 562 F.3d 530, 547-48 (3d Cir. 2009), citing 18 U.S.C. §3553.

On November 1, 2025, the sentencing process was streamlined when the most recent amendments to the U.S. Sentencing Guidelines went into effect. The sentencing process went from three steps down to two by eliminating the requirement that the court consider departures. Departures have been removed from the text of the Guidelines. The new two-step process requires that the court: (1) calculate the applicable advisory guidelines range; and (2) determine the appropriate sentence upon consideration of all the factors set forth in 18 U.S.C. §3553(a). *U.S. Sentencing Guidelines Manual*, *App. C*, *amendment 836* (2025).

Although no longer referred to as a departure, a downward adjustment to the applicable guideline range for substantial assistance to authorities does still exist, but in a different form. Section 5k1.1 now reads that where a defendant provides

substantial assistance to authorities "a sentence that is below the otherwise applicable guideline range may be appropriate."

**A. <u>Sentencing Guidelines Calculation</u>**

The PSR accurately calculates the advisory guideline imprisonment range of 0 to 6 months based upon an offense level of 8 and a criminal category I. Moreover, since the guideline range falls within Zone A of the Sentencing Table, a sentence other than imprisonment would be appropriate. U.S.S.G. §5C.1.1, comment, n.10; U.S.S.G. §5B1.1, comment, n.1(a).

**B. <u>Sentencing Considerations Under 18 U.S.C. §3553 (a)</u>**

The computation of Mr. Moore's advisory guidelines range is just the first step of the Court's analysis. Step two of the sentencing process requires that the Court consider all of the factors set forth in 18 U.S.C. §3553(a). A sentence, whether within or outside the Guidelines, must reflect "rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (*en banc*). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available; . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

A thoughtful application of these factors to Mr. Moore's case leads to the inescapable conclusion that a sentence of probation would be appropriate.

### 1. Nature and Circumstances of the Offense and Personal History and Characteristics of the Defendant

Mr. Moore is a 24-year-old man with no prior criminal record. He was born in New York and raised by his mother in several upstate New York towns in and around Albany. Mr. Moore's parents divorced when he was just 6 years old, and his father moved to Kenya. Since 2014, Mr. Moore has lived with his mother and younger brother, Donovan, in Latham, New York.

Mr. Moore pleaded guilty to one misdemeanor charging trafficking in passwords in violation of 18 U.S.C. §1030(a)(6) and (c)(2)(A). He understands

that his offense is serious, and he has accepted full responsibility for committing it. He makes no excuses for conduct that he knew was wrong.

In his heartfelt letter to the Court, Mr. Moore unequivocally admits culpability for his illegal conduct:

> I am writing this letter to express my sincere regret for my actions. I pled guilty to trafficking in passwords after being involved in SIM swapping. I fully understand how serious this crime was and the harm it caused to others.
>
> This was my first offense. It happened when I was young and during the COVID quarantine period. I made the mistake of associating with the wrong people and made poor choices. I take complete responsibility for my involvement. There is no excuse for what I did, and I am truly sorry for the damage and stress I caused.

*See*, Letter of Joseph Moore, attached as Exhibit "A."

Mr. Moore's offense conduct is not the true measure of his character. Indeed, he is a diligent and hard-working young man who works between 40 and 60 hours per week managing two Primo Hoagie shops in Latham and Troy, New York. He committed the instant offense when he was 19 years old and lacked maturity. He has no prior record of arrests or convictions.

The people who know Mr. Moore best, his mother, brother, girlfriend, and employer have written the Court attesting to his generosity, integrity and decency. *See*, Letters attached of Mary Moore, Donovan Moore, Maria Vorfi, and Krish Patel, attached as Exhibit "B."

Donovan Moore describes his older brother's impact on his life:

> One moment that has always stayed with me happened when we were younger. During a very difficult time in my life, I was struggling mentally and was in a very dark place. He came to check on me and intervened at a moment where I was not in a good headspace. His response in that moment helped prevent me from making a permanent decision that would have changed my life forever. After that, he continued to support me in his own way and helped me understand that there were better paths forward in life. That experience is something that I will never forget, and it is a large part of why I am here today.[1]

*See*, Exhibit "B."

Mr. Moore's mother, Mary Moore, asks that the Court consider her son's fundamental good character and not place undue weight on reckless decisions that he made while still a teenager:

> I humbly and respectfully ask the court to acknowledge his aspects and his personal character in society. Your Honor, I understand the seriousness of the matter presented before you and the court as a whole. I hope that you will take into account my son, whom I have known and raised to be caring, fair, contribute to society, and above all, respect and care for all people as they would like him to be respected and treated. I ask for your compassion and lenience as you make a decision on Joseph, who has been so hard on himself for making a reckless decision as a teenager and has learned from his mistakes.

*See*, Exhibit "B."

[1] Donovan Moore is referring to an incident when his brother stopped him from committing suicide. PSR ¶38.

Maria Vorfi's letter to the Court also attests to Mr. Moore's exemplary character traits:

> Although I did not know Joe at the time of the events before the Court, I can honestly speak about the person I have come to know since we met. Joe is someone I can always count on. He is honest in his words and actions, and he cares deeply about his family and the people around him. He is always willing to help them whenever they need him. Seeing the way he treats his loved ones has shown me the strength of his character.
>
> Joe has always shown compassion toward others, He has supported me through difficult times, encouraged me when I needed it most, and has never hesitated to help people. These are qualities I have consistently seen throughout the time I have known him.

*See*, Exhibit "B."

Finally, Mr. Moore's employer and friend, Krish Patel, describes the kind of employee and friend Mr. Moore has been:

> In all the time that I have known Joe, both as an employee and as a friend, I have found him to be one of the most honest and kind people I know. He has always been willing to help me in a pinch, stepping up without hesitation whenever I needed it, whether the request was large or small. That kind of reliability and generosity says a great deal about who someone is, and it reflects the Joe I have come to know and trust over the past decade.

*See*, Exhibit "B".

His experience in this case has taught Mr. Moore valuable life lessons. He now understands the importance of avoiding negative influences, working hard,

and making a daily commitment to doing the right and honorable thing. He is determined to be a productive member of society and to live a law-abiding life. *See*, Exhibit "A.

**1. <u>Goals of Sentencing</u>**

After considering the nature and circumstances of the offense and Mr. Moore's personal history and characteristics, the Court must then consider the goals of sentencing as articulated in 18 U.S.C. § 3553(a)(2). Specifically, the Court must consider:

> The need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from future crimes of the defendant; and
> (D) to provide the defendant with needed educational, vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Consideration of the section 3553(a)(2) factors in light of 18 U.S.C. §3553(a)'s penultimate requirement, that is, to impose a sentence sufficient but not greater than necessary to comply with the goals of sentencing, supports a sentence of probation for Mr. Moore.

**A. Seriousness of the offense, promote respect for the law and just punishment**

In Mr. Moore's case, a custodial sentence would not be necessary to promote respect for the law. As noted by the Supreme Court:

> (a) sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.

*Gall v. United States*, 552 U.S. 38, 54 (2007), citing U.S. District Court opinion.

Additionally, since Mr. Moore's applicable guideline range is in Zone A of the Sentencing Table, and he is a zero-point offender, a sentence of imprisonment is not required and is generally appropriate. U.S.S.G §5C1.1(b) and comment, n.10.

**B. Deterrence**

It cannot gainsaid that Mr. Moore is unlikely to be a repeat offender. He has no prior criminal record. His crime results from reckless decisions he made as a teenager. There is nothing to suggest a tendency toward recidivism. Therefore, specific deterrence does not require a custodial sentence.

Likewise, general deterrence should not be a concern here. Mr. Moore's liberty will be restrained while under supervision by the Probation Department and he will be required to pay $91,126.50 in restitution. Anyone contemplating

trafficking in passwords can look to Mr. Moore's case and conclude that they will likely suffer a similar fate.

**C. The need to provide educational, vocational training or medical care**

Mr. Moore is gainfully employed as an assistant manager of two Primo Hoagie locations. He will continue in that role while on probation. In addition, he is healthy and requires no medical care.

**3. The Kind of Sentences Available**

The Court must also consider the kind of sentences available here. A probationary sentence for Mr. Moore is authorized by statute. *See*, 18 U.S.C. §3561(a)(2). Additionally, as noted above, the Guidelines state that a non-custodial sentence would be generally appropriate in Mr. Moore's case.

**4. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Mr. Moore has no prior criminal history of arrests of convictions. As discussed above, his personal history reveals a person of fundamentally good character who has pleaded guilty to a misdemeanor offense.

Given the combination of Mr. Moore's personal history and characteristics, his agreement to pay restitution, his Guidelines range, and the relative severity of

the charge, a probationary sentence would not create unwarranted sentencing disparity.

### 5. Restitution

Mr. Moore will be ordered to pay $91,126.50. He needs to continue working in order to satisfy this obligation.

## IV. CONCLUSION

Joseph Moore has accepted responsibility for trafficking in passwords. He committed his offense when he was 19 years old and lacked mature judgment. His guideline imprisonment range is 0 to 6 months and within Zone A of the Sentencing Table which would support a non-custodial sentence. Further, the Court has statutory authority to impose a probationary sentence in cases where a misdemeanor is involved. Therefore, under all of the relevant factors, a sentence of probation for Mr. Moore would be sufficient but not greater than necessary to satisfy the purposes of sentencing.

Respectfully submitted,

MANCANO LAW, PLLC

DATED: July 16, 2026

By: */s/ Joseph D. Mancano*
JOSEPH D. MANCANO

## CERTIFICATE OF SERVICE

I, Joseph D. Mancano, do hereby certify that the foregoing has been delivered electronically to all counsel of record in the above-captioned matter via the Court's electronic filing system.

DATED: July 16, 2026

*/s/ Joseph D. Mancano*
Joseph D. Mancano, PBA No. 30281
Mancano Law, PLLC
353 West Lancaster Ave, Suite 300
Wayne, Pennsylvania 19087
Telephone: (215) 399-5806
Facsimile: (215) 399-5805
Email: jdm@mancano.com
**Attorney for Defendant Joseph Moore**