**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-cr-439** |
| **JOSEPH MOORE** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The defendant trafficked passwords as part of a fraud scheme to steal cryptocurrency. He did so as part of an ongoing, widespread cybercrime organization, known as the "Com." His role, however, was limited in both time and scope. For these reasons, as well as for the reasons provided below, the government recommends a sentence of probation.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. <u>BACKGROUND</u>

On November 12, 2025, the defendant pled guilty to trafficking passwords in violation of 18 U.S.C. § 1030(a)(6)(A), (c)(2)(A). During his plea colloquy, the defendant admitted that on or about March 6, 2021, the defendant's coconspirators caused a two-factor authentication code to be sent to a phone that the defendant controlled. This was part of a SIM swapping scheme, in which the defendant was acting a holder.

SIM swapping is a type of account takeover fraud that generally exploits weaknesses in authentication mechanisms targeting mobile telephones, allowing criminals to take over a victim's telephone communications. Cyber criminals will generally change the SIM card associated with a victim's account and/or telephone number with a SIM card the criminal

controls. Once the SIM card is changed, the criminal controls the victim's telephone number, which then can be used to reset accounts containing valuable property (such as cryptocurrency accounts) or other valuable information. The individual who controls the actual device to which the victim's phone number is swapped is referred to as a "holder." Many online accounts are secured with authentication features that rely on the user controlling a particular mobile telephone number. Consequently, once a victim's telephone number has been stolen by one of the perpetrators, the perpetrators hijack the accounts that they are targeting.

In this instance, the two-factor authentication code was associated with Victim 1's Coinbase account, and Victim 1 was a resident of the Eastern District of Pennsylvania. The defendant, who resided in New York, received the two-factor authentication code and transmitted it to his conspirators within the Com. The conspirators then utilized the code to bypass Coinbase's two-factor authentication security provisions, accessed Victim 1's Coinbase account, and stole approximately $91,000 from the account. At the time the defendant forwarded the code to his coconspirators, he knew that the code would be used to access cryptocurrency accounts and steal the associated funds. The defendant received approximately $3,500 for his role in the theft scheme. The defendant also acted as a holder on other occasions for members of the Com.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The statutory maximum sentence for the violation of 18 U.S.C. § 1030(a)(6) (trafficking in passwords), is 1 year imprisonment, 1 year of supervised release, a $100,000 fine, and a $25 special assessment.

### B. <u>Sentencing Guidelines Calculation</u>.

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

| Guidelines | USSG Section | Points | PSR Paragraph |
|---|---|---|---|
| Base Offense Level | § 2B1.1(a)(2) | +6 | 15 |
| Loss more than $40,000 | § 2B.1.(b)(1) | +6 | 16 |
| Acceptance of Responsibility | § 3E1.1 | -2 | 21 |
| Zero Point Offender | § 4C1.1 | -2 | 22 |
| **Total Offense Level** | | **8** | |

The defendant has no criminal history so he falls within Criminal History Category I. The final guidelines calculation for an offense level of 8 and a Criminal History Category I is 0 to 6 months incarceration. The government agrees with this calculation.

## III. <u>ANALYSIS</u>

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[2]

### A. Consideration of the 3553(a) Factors Regarding Imprisonment.

The defendant's crime related to his limited involvement in a widespread, notorious criminal organization known as the Com. This organization is responsible for nationwide cybercriminal acts ranging from extortion of women and young girls, acts of violence for hire, and—as here—pervasive cryptocurrency thefts. While his involvement with that group is concerning, the defendant himself played a very limited role in its criminal activity. He acted as a "holder" in a SIM swap scheme that successfully stole tens of thousands of dollars of cryptocurrency. The holder is the least sophisticated and generally least culpable role within the

[2] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (*quoting United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

group. Accordingly, while the defendant's involvement in this crime and particularly his relationship to the Com is serious, a sentence of probation adequately reflects his limited role.

The defendant's history and characteristics also weigh in favor of a non-custodial sentence. He has no criminal record. He does not have a history of extensive drug use and, as noted in the presentence report ("PSR"), his last seven drug screens have been negative after he tested positive for marijuana on February 4, 2026. PSR ¶ 44. He is a high school graduate and has a demonstrated work history—he is currently the manager of a hoagie shop and was previously employed as an automotive mechanic. PSR ¶ 48-49. This history weighs in favor of a sentence of probation.

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity. Further, there is no need in this case to adjust the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner []."" § 3553(a)(2)(D).

According to the plea agreement, the defendant has agreed to pay $91,126.50. This amount is necessary to make the victim of his crimes whole.

**C. <u>Supervised Release</u>.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length

of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release is warranted. As explained above, the defendant was involved in a widespread cybercrime group. Throughout this investigation, the government is aware that many members of this group attempt to sever contacts only to rejoin and resume committing crimes. Close supervision is warranted to ensure he does not recidivate and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7).

Additionally, while the defendant has apparently ceased his use of illicit drugs, he previously tested positive for cocaine and has a long history of smoking marijuana. The Commission notes: "In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note 3.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence of probation fully accounts for the scope and severity of the defendant's criminal conduct and is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Anthony J. Carissimi*
ANTHONY J. CARISSIMI
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Joseph Mancano
*Attorney for Joseph Moore*

*/s Anthony J. Carissimi*
ANTHONY J. CARISSIMI
Assistant United States Attorney

DATED: July 17, 2026.